## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 20 2015, 11:21 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deandre Averitte<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 20, 2015<br><br>Court of Appeals Case No.<br>49A02-1412-CR-860<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Clayton A. Graham, Judge, and The Honorable Steven J. Rubick, Magistrate<br><br>Trial Court Case No.<br>49G17-1408-F6-40167 |

**Mathias, Judge.**

[1]     Deandre Averitte ("Averitte") was convicted in Marion Superior Court of unauthorized entry of a motor vehicle as a Level 6 felony and theft as a Class A misdemeanor. Averitte appeals and presents two issues, which we restate as:

(1) whether the State presented sufficient evidence to support Averitte's conviction of unauthorized entry of a motor vehicle as a Level 6 felony; and (2) whether the trial court erred in ordering Averitte to pay $140 in restitution without determining Averitte's ability to pay.

We reverse in part and remand with instructions.

## Facts and Procedural History

At the time relevant to this appeal, Averitte was in a relationship with Jeterica Penner ("Penner"), who lived in an apartment in Indianapolis. The couple had one child together—nine-month-old K.A. Averitte did not live with Penner but did sometimes spend the night at her apartment. Penner also allowed Averitte to occasionally borrow her car, which she had purchased from a "buy here/pay here" car dealership.

On the night of August 15, 2014, Penner allowed Averitte to use her car for the purposes of going to get a haircut and buying some new clothes. Instead, Averitte used the car to go to a club and drink alcohol to celebrate his birthday. Averitte did not return the car to Penner until approximately 3:00 a.m. the following morning. When he returned to Penner's apartment, Averitte was drunk and smelled of women's perfume. This angered Penner, who did not want Averitte to be around her children. Penner went to her bedroom and lay in her bed. When Averitte attempted to lie next to her, she got up and went to the living room and sat on the couch. Averitte followed her there and sat next to her on the couch. Averitte then became more aggressive, and Penner told

him to leave her alone. In response, Averitte telephoned his sister to prove to Penner that he smelled of perfume because he had been with his sister and cousins. Unconvinced, Penner locked herself in the bathroom, but Averitte kicked in the door. Averitte's sister, who was still on the telephone with her brother, told Averitte that she would come to Penner's apartment to pick him up. Penner told Averitte to leave, but he stated that he was not going anywhere and pushed Penner.

[5] Eventually, Penner and Averitte went into the kitchen, where Averitte attempted to grab Penner's car keys from her. Ultimately, Averitte was able to pull the car key from Penner's keychain. Around the same time, Averitte's sister and cousin arrived. Apparently siding with Penner, Averitte's sister took Penner and the children into the bedroom and locked the door. The sister informed Averitte that he needed to "calm down" and leave. Tr. p. 23. Ignoring his sister, Averitte kicked in the bedroom door, took his son, K.A., and left in Penner's car. Averitte's sister told Penner that she saw Averitte drive away with K.A. on his lap.

[6] K.A. was found at his cousin's house across the street from Penner's apartment the next day. Sometime later, Penner's car was recovered. However, because Averitte had taken Penner's only car key, she had to have a locksmith create a new key for her, which cost $140. Averitte was soon arrested and admitted to the police that he had taken the car and his son.

On August 20, 2014, the State charged Averitte with four counts: Count I, Level 6 felony neglect of a dependent; Count II, Level 6 felony battery in the presence of a child; Count III, Level 6 felony domestic battery; and Count IV, Class A misdemeanor battery resulting in bodily injury. One week later, the State amended the information to include two additional counts: Count V, Level 6 felony unauthorized entry of a motor vehicle; and Count VI, Class A misdemeanor theft. Averitte waived his right to a jury trial, and the trial court held a bench trial on October 30, 2014. At the close of the State's case-in-chief, Averitte moved for an involuntary dismissal of Count I, which the trial court granted. *See* Ind. Trial Rule 41(B). At the conclusion of the trial, the court found Averitte not guilty as to Counts II – IV, but guilty as to Counts V and VI.

At the sentencing hearing, which immediately followed the bench trial, Averitte's counsel argued that his conviction for Level 6 felony unauthorized entry of a motor vehicle could not stand because the trial court had dismissed the charge of child endangerment, yet the conviction for unauthorized entry was elevated based on an allegation that Averitte had endangered K.A. The trial court concluded that Averitte had waived this issue, and proceeded to sentence Averitte on both counts to concurrent terms of one year, with 185 days executed and 180 days suspended.

On November 6, 2014, Averitte filed a motion to correct error. In this motion, Averitte again argued that his conviction for unauthorized entry of a motor vehicle was elevated to a Level 6 felony because of his use of the vehicle to further the commission of a crime which the trial court had dismissed;

therefore, Averitte claimed that his conviction as a Level 6 felony could not stand. The trial court denied the motion to correct error on November 20, 2014, and Averitte now appeals.

## I. Sufficiency of the Evidence

Averitte first argues that the evidence was insufficient to support his conviction for unauthorized entry into a motor vehicle as a Level 6 felony. When reviewing claims of insufficient evidence, we apply our well-settled standard of review: we will neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

To convict Averitte of unauthorized entry of a motor vehicle as a Level 6 felony, the State had to prove beyond a reasonable doubt that he:

> did enter the motor vehicle of Jeterica Penner, to-wit: 2004 silver Chevrolet Malibu, knowing that he did not have permission of Jeterica Penner to enter said vehicle and Deandre Averitte did not have a contractual interest in said vehicle *and the vehicle was used to further the commission of a crime, to-wit: endangering [K.A.],* and Deandre Averitte knew or should have known that such was intended.

Appellant's App. pp. 28-29 (emphasis added). This generally tracks the language of the relevant statute, which provides:

> (d) A person who:
>
>> (1) enters a motor vehicle knowing that the person does not have the permission of an owner, a lessee, or an authorized operator of the motor vehicle to enter the motor vehicle; and
>>
>> (2) does not have a contractual interest in the motor vehicle;
>
> commits unauthorized entry of a motor vehicle, a Class B misdemeanor.
>
> (e) The offense under subsection (d) is:
>
> * * *
>
>> (2) a Level 6 felony if a person occupies the motor vehicle while the motor vehicle is used to further the commission of a crime, if the person knew or should have known that a person intended to use the motor vehicle in the commission of a crime.

Ind. Code § 35-43-4-2.7 (2013).

## A. Lack of Contractual Interest

Averitte first argues that the evidence was insufficient to establish that he did not have a contractual interest in the vehicle as required by subsection (d)(2). Averitte notes that the only evidence regarding this element was Penner's testimony that she purchased the vehicle at a "buy here/pay here" lot and that the dealer retained a key in order to regain possession of the car should Penner default on her payments. Averitte therefore claims that this means that more than one person had a contractual interest in the vehicle: Penner and the dealer. However, this is irrelevant.

[13]   The fact that two other people—Penner and the dealer—may have had a contractual interest in the vehicle has no bearing on whether Averitte himself had a contractual interest in the car. In this regard, Penner testified that she alone purchased the car from the dealer and that Averitte had never paid for the vehicle. Further, Penner explained that she occasionally gave Averitte permission to use her car. After Averitte came back to her apartment after a night celebrating in a club, however, Penner did not give him permission and instead attempted to prevent him from taking the car. Indeed, Averitte had to pull the car key from the keychain that was in Penner's hand. From this, a reasonable trier of fact could conclude that Averitte did not have a contractual interest in Penner's vehicle.

### B.  Furthering the Commission of Child Endangerment

[14]   Averitte also claims that the State failed to prove that he used Penner's car to further the commission of the crime of endangering K.A. The State was required to prove this in order to elevate Averitte's conviction to a Level 6 felony. *See* I.C. § 35-43-4-2.7(e)(2).

[15]   Penner was also charged with endangering K.A. as a separate offense. The charge of child endangerment alleged that Averitte: "having the care of [K.A.], a dependent, did knowingly place said dependent in a situation that endangered the dependent's life or health, that is, drove a vehicle with [K.A.] on his lap, unrestrained in the driver's seat and/or while under the influence of alcohol." Appellant's App. p. 28. However, the trial court dismissed this charge at the close of the State's evidence for lack of evidence. *See* Tr. p. 60. Averitte

therefore argues that his conviction for unauthorized entry of a motor vehicle cannot be elevated based on the same alleged act of child endangerment for which the trial court concluded the evidence was insufficient. We are inclined to agree.

[16] At trial the only evidence regarding how K.A. was secured in the car was the hearsay statement of Averitte's sister, who told Penner that Averitte drove off with K.A. on his lap.[1] That statement, however, was stricken from the record upon objection and motion by the defense. Thus, the prosecution presented no evidence regarding whether K.A. was in a car seat or in Averitte's lap as alleged.

[17] With regard to the allegation that Averitte endangered K.A. by driving with the child while under the influence of alcohol, the trial court specifically found that the evidence was insufficient to support this allegation:

> there is no evidence in the record [that] the child was not adequately placed in the safety seat. *There is no evidence in the record of any impaired driving, or otherwise.* There is simply a statement that the child was taken from the residence and was found across the street a few hours later.

Tr. p. 60 (emphasis added). Accordingly, Averitte's conviction cannot be elevated to a Level 6 felony for endangering K.A. because no admissible evidence shows that Averitte drove with K.A. unsecured on his lap and/or

---

[1] The prosecution made no argument that the statement by Averitte's sister was an excited utterance, a present sense impression, or any other exception to the hearsay rule. *See* Tr. p. 32.

while under the influence of alcohol. We therefore reverse Averitte's conviction for unauthorized entry of a motor vehicle as a Level 6 felony and remand with instructions that the trial court vacate the judgment and sentence thereon. The State did, however, establish that Averitte committed the offense of unauthorized entry of a motor vehicle as a Class B misdemeanor, and on remand, we further instruct the trial court to enter a judgment of conviction for Class B misdemeanor unauthorized entry of a motor vehicle and impose a sentence thereon.

## II. Restitution

Averitte also claims that the trial court erred in ordering him to pay $140 in restitution to Penner to cover her cost of obtaining a new key for her car. Our supreme court has explained:

> The principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused. Restitution also serves to compensate the offender's victim. And, when the trial court enters an order of restitution as part of a condition of probation, the court is required to inquire into the defendant's ability to pay. *See* Ind. Code § 35-38-2-2.3(a)(5) ("When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance."). This is so in order to prevent indigent defendants from being imprisoned because of a probation violation based on a defendant's failure to pay restitution.
>
> * * *
>
> [A] trial court may [also] order restitution as part of a defendant's sentence wholly apart from probation. And when restitution is

ordered as part of an executed sentence, an inquiry into the defendant's ability to pay is not required. In such a situation, restitution is merely a money judgment, *see* I.C. § 35-50-5-3(b), and a defendant cannot be imprisoned for non-payment.

*Pearson v. State*, 883 N.E.2d 770, 772-73 (Ind. 2008) (some citations omitted).

[19]    In the present case, it is not entirely clear whether the trial court's restitution order was a condition of probation or a money judgment entered as a separate part of Averitte's sentence. The trial court's oral sentencing statement provided that:

> [Averitte] will be placed on probation for one hundred eighty (180) days, subject to the standard terms and conditions of the Marion County probation department. *He is ordered to pay restitution to Jeterica Penner in the amount of one hundred forty ($140) dollars,* that amount being the cost incurred by the victim for recovering the vehicle, the key for the vehicle. He will be assessed court costs in the amount of one hundred sixty eight ($168) dollars. There will be a thirty two ($32) dollar fine. I'll place him on a sliding scale for all probation user fees.

Tr. p. 82. Neither the sentencing order nor the abstract of judgment mention the restitution order. The chronological case summary ("CCS") contains an entry providing in relevant part:

> Fee Totals:
> | | |
> |---|---|
> | Adult Probation User Fee Program | 100.00 |
> | Criminal Case Fines | 32.00 |
> | Criminal Court Costs and Fees | 168.00 |

    Judgment Restitution      140.00
    Fee Totals $                    440.00
Comment ( )
Confinement to Commence 10/30/2014
    County Jail
    Term:  365 Days
    Jail Credit:  71 Days
    Suspended:  180 Days
*Condition – Adult:*
    *1.  Probation Sliding scale for probation fees.  Defendant to pay*
    *restitution to AV in amount of 140.00 as first priority.*

Appellant's App. p. 10 (emphasis added). Thus, the CCS lists the restitution as a "judgment." This would seem to indicate that the restitution order was a separate money judgment. However, under the heading of "conditions" is a mention of probation and that Averitte was to pay restitution as "first priority." *Id*. This could be read as a requirement that Averitte pay restitution as a condition of his probation.

[20] We are therefore unable to determine whether the restitution was intended to be a condition of probation or a separate money judgment.[2] Upon remand, we instruct the trial court to clarify whether the restitution order is a condition of probation. If it is, then the trial court must inquire as to Averitte's ability to pay. *See Pearson*, 883 N.E.2d at 772. If the restitution is simply a money judgment,

---

[2] The State, assuming that the restitution order was a condition of probation, argues that sufficient evidence is in the record to support a finding that Averitte could pay $140 in restitution. This may well be. However, the trial court did not inquire into Averitte's ability to pay, nor did it make a finding that he did have the ability to pay. This court is not a fact-finding court, and Averitte's ability to pay restitution must be determined in the first instance by the trial court, if the court intended the payment of restitution to be a condition of Averitte's probation.

then the trial court has no need to inquire as to Averitte's ability to pay. *See id.* at 772-73.

## Conclusion

We reverse Averitte's conviction for unauthorized entry of a motor vehicle as a Level 6 felony and remand with instructions that the trial court vacate the judgment and sentence on this conviction and instead enter a judgment of conviction for Class B misdemeanor unauthorized entry of a motor vehicle and impose a sentence thereon. We are unable to determine whether the trial court's restitution order is a condition of Averitte's probation or a separate money judgment. On remand, the trial court is instructed to clarify whether the restitution order is a condition of probation and, if so, determine whether Averitte is able to pay this relatively small amount of restitution.

Reversed in part and remanded for proceedings consistent with this opinion.

May, J., and Robb, J., concur.